UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | Criminal No. 1:22-cr-00354-RCL-1 and 2 |
| RICHARD SLAUGHTER, and ) | |
| CADEN GOTTFRIED, ) | |
| ) | |
| Defendants ) | |

**DEFENDANTS MOTION TO DISMISS COUNTS 5 AND 7 ON GROUNDS THAT A "STICK-LIKE OBJECT" IS NOT AN INHERENT DEADLY AND DANGEROUS WEAPON—AND "ENTERING AND REMAINING" AND "DISORDERLY CONDUCT" WHILE CARRYING SUCH AN OBJECT IS NOT AN OFFENSE.**

COMES NOW Defendants Rick Slaughter and Caden Gottfried, by and through undersigned counsel John Pierce, with this motion to dismiss Counts 5 and 7 on grounds that these counts fail to state a valid criminal claim.

Count 5 accuses defendant Richard Slaughter of "entering and remaining in a restricted area while using and possessing a deadly and dangerous weapon, a stick-like object," in supposed violation of 18 U.S.C. Section 1752(a)(1) and (b)(1)(A). The problem is that a "stick-like object" is not an inherently deadly and dangerous weapon. It is only by <u>using</u> such an "object" <u>as a weapon</u> (i.e., by assaulting or striking a person with the object) that a "stick-like object" can be legally categorized as a "deadly and dangerous weapon.

One cannot be lawfully convicted of merely being in the wrong place while holding a "stick-like object" as if one was holding a deadly weapon.

The same is true regarding Count 7, which accuses Richard Slaughter of "disorderly and disruptive conduct in a restricted area while using and carrying a deadly and dangerous weapon, a stick-like object," in supposed violation of 18 U.S.C. Section 1752(a)(2) and (b)(1)(A). Just as with Count 5, Count 7 must be

1

dismissed. A "stick-like object" can only be legally considered a "deadly and dangerous weapon" upon its use as a deadly and dangerous weapon. Absent such weapon use, a stick-like object is wholly lawful to carry, hold and use while committing disorderly conduct.

Defendants cannot be convicted of these weapons counts for merely holding or otherwise using a "law enforcement shield" in a normal manner—as a shield is a defensive object in its intended use, rather than a "deadly and dangerous weapon."

Other courts presiding over January 6 cases have dismissed similar charges alleging that plastic flagpoles were deadly and dangerous weapons (Brian Mock's case), Judge Cooper in 1:22-cr-00042-CRC USA v. HERNANDEZ (flagpole not a deadly & dangerous weapon),

(Defendants do not contest that it is <u>conceivably possible</u> for a shield to be used as a "deadly and dangerous weapon" in a given case; for example, where an assailant thrusts the sharp end of such a shield at a victim's head or throat. However, upon information and belief, the United States does not allege such use by the defendants; and thus these "deadly and dangerous weapon" counts must be dismissed rather than waste the Court's time and resources.)

We therefore pray for an order requiring the government to provide a bill of particulars detailing with particularity how the government contends the defendants "used" the "law enforcement shield" in question. We expect this bill of particulars to lead to dismissal of these counts on grounds that the "deadly and

dangerous weapon" described in the indictment ("a law enforcement shield") simply does not qualify as a deadly and dangerous weapon when used in a normal sense.

## DISCUSSION

A "stick-like object" cannot be a "deadly and dangerous weapon" unless it is used in an extremely unusual, weaponlike, manner. Thus, the indictment might as well claim that Defendants committed disorderly conduct in a restricted area with ball point pens in their pockets, or that Defendants entered and remained at the Capitol while carrying lunchboxes, etc., etc.

Under no interpretation of federal law can a "stick-like object," used as intended by its manufacturer, be "a deadly and dangerous weapon"—at least unless the indictment alleges that Defendant used or deployed the object in a weaponlike manner of some kind by striking or bludgeoning someone with it.

**Counts 5 and 7 must be dismissed.**

Federal Rule of Criminal Procedure 7(c) provides that an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged..." Fed. R. Crim. Proc. 7(c). Under Rule 7(f), "[t]he court may direct the government to file a bill of particulars." *Id.* at 7(f). "A bill of particulars can be used to ensure that the charges brought against a defendant are stated with enough precision to allow the defendant to understand the charges, to prepare a

3

defense, and perhaps also to be protected against retrial on the same charges." *United States v. Butler*, 822 F.2d 1191, 1193 (D.C. Cir. 1987).

In this case, where an obvious non-weapon is alleged to be a "deadly and dangerous weapon" by the United States (repeatedly, in multiple counts), the United States must be required to state its theory of how the facts might lead to conviction for such crimes. Otherwise, if the government accuses Defendants of merely using the object in a normal manner—e.g., by simply holding it—these counts must be dismissed.

### THE GOVERNMENT'S SEEMINGLY OPEN-ENDED POWER TO DECLARE ANY OBJECT TO BE A "DEADLY AND DANGEROUS WEAPON" AT THE GOVERNMENT'S PLEASURE IS UNCONSTITUTIONAL AND VIOLATES THE RULE OF LENITY

"Congress did not attempt to define the terms 'deadly or dangerous' weapon," wrote the Ninth Circuit, "finding this not feasible, practical or necessary and leaving it to the court to determine in each case, on an ad hoc basis, whether the weapon was deadly or dangerous." *United States v. Dishman*, 486 F.2d 727, 730 (9th Cir. 1973). And several courts have punted the question even further, suggesting the definition is entirely up to juries. See, e.g., *United States v. Moore*, 846 F.2d 1163 (8th Cir. 1988) ("the question of what constitutes a 'deadly and dangerous weapon' is a question of fact for the jury"). In effect, this has enabled and empowered federal prosecutors to concoct the most ridiculous, specious, and preposterous accusations of using "deadly and dangerous weapons" for doing such

4

things as merely wearing a pair of gloves in a place the government calls "restricted." This cannot be the law.

As Chief Justice Marshall explained, "[t[he rule that penal laws are to be construed strictly, is perhaps not much less old than construction itself." *United States v. Wiltberger*, 18 U.S. (5 Wheat.) 76, 95 (1820). It first arose to mitigate draconian sentences. As English statutes kept expanding the death penalty and curtailing mercy, courts tempered them by construing them narrowly. Livingston Hall, *Strict or Liberal Construction of Penal Statutes*, 48 Harv. L. Rev. 748, 749-51 (1935). The canon was well established by the time of Blackstone. 1 William Blackstone, *Commentaries* 88. And it took root in American law soon thereafter. *Wiltberger*, 18 U.S. (5 Wheat.) at 95.

Under the rule of lenity, courts must construe penal laws strictly and resolve ambiguities in favor of the defendant. See, e.g., *Liparota v. United States*, 471 U.S. 419, 427 (1985); see also Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 296 (2012). The touchstone is the text: the "ordinary," evidently intended meaning of "the words of the statute." *Wiltberger*, 18 U.S. (5 Wheat.) at 95.

The rule of lenity is entwined with notice and thus due process. See *McBoyle v. United States*, 283 U.S. 25, 27 (1931) (Holmes, J.). It gives citizens fair warning of what conduct is illegal, ensuring that ambiguous statutes do not reach beyond

their clear scope. Lenity expresses our "instinctive distaste against men languishing in prison unless the lawmaker has clearly said they should." Henry J. Friendly, *Mr. Justice Frankfurter and the Reading of Statutes*, in *Benchmarks* 196, 209 (1967). That approach fits with one of the core purposes of our Constitution, to "secure the Blessings of Liberty" for all citizens. Penal laws pose the most severe threats to life and liberty, as the Government seeks to brand people as criminals and lock them away. To guard against those threats, the rule of lenity favors respect for individual rights. *Wiltberger*, 18 U.S. (5 Wheat.) at 95.

The Ninth Circuit in *Dishman*, *supra*, looked to state law definitions:

> [A] dangerous or deadly weapon is one which in its intended or readily adaptable use is likely to produce death or serious bodily injury." 94 CJS Weapons, § 6(c), page 489; Generally speaking, "[a] deadly weapon is one likely to produce death or great bodily injury." The character of an implement as a deadly weapon is determined by its capacity to inflict death or injury, . . . ." ". . . a toy, or a chocolate candy pistol has no ability to commit a violent or any injury on the person of another, . . . unless used as a club. . . ." 244 Cal. App. 2d 121 at 125, 52 Cal. Rptr. 733 (1966).

Dishman, 486 F.2d at 730.

IT IS ONLY BY DEADLY OR DANGEROUS <u>USE</u> OF A NON-OBVIOUS-WEAPON OBJECT THAT SUCH A NON-OBVIOUS-WEAPON OBJECT BECOMES A "DEADLY AND DANGEROUS" WEAPON; AND THE INDICTMENT FAILS TO ALLEGE ANY SUCH USE.

Counts 5, and 7 fail to state a claim upon which Defendant Slaughter can be subjected to a trial. "If the defendant had struck or attempted to strike with it, the question whether it was or was not a dangerous weapon in the manner used, or

6

attempted to be used, would be one of fact; but the courts quite uniformly hold <u>as a matter of law</u> that an unloaded pistol, when there is no attempt to use it otherwise than by pointing it in a threatening manner at another, it not a dangerous weapon." *United States v. Dishman*, 486 F.2d at 731.

The *Dishman* Court found that the government's accusation of "deadly and dangerous weapon" use must identify either an obviously deadly weapon (such as a real loaded firearm, unlawfully displayed or deployed) or an allegation of how the alleged "weapon" was used in a "deadly and dangerous" manner. In effect, the object becomes a "weapon" only upon a fact-specific description in the indictment of such actual use. "It is . . . only then that the inert object becomes a "deadly and dangerous" weapon." *Dishman*, at 732 ("we hold that Dishman's starter pistol <u>as a matter of law</u> is just not a "deadly and dangerous" weapon per se").

CONCLUSION

FOR THE REASONS DESCRIBED ABOVE, defendants request for the Court to dismiss Counts 5 and 7 because a "stick-like objects" is simply not a "deadly and dangerous weapon."

Dated: September 1, 2023                                             Respectfully Submitted,

<u>/s/ John M. Pierce</u>
John M. Pierce
21550 Oxnard Street
3rd Floor, PMB #172
Woodland Hills, CA 91367
Tel: (213) 400-0725
Email: jpierce@johnpiercelaw.com

7

**CERTIFICATE OF SERVICE**

    I, John M. Pierce, hereby certify that on this day, September 1, 2023, I caused a copy of the foregoing document to be served on all counsel through the Court's CM/ECF case filing system.

                                                /s/ John M. Pierce
                                                John M. Pierce